UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK MANCUSO,

                                        Plaintiff,

        v.

THE VILLAGE OF PELHAM; MAYOR
TIMOTHY CASSIDY; FIRE CHIEF
WILLIAM T. STONE, JR.; VILLAGE
ADMINISTRATOR ROBERT A.
YAMUDER; LT. ROBERT R.
BENKWITT, III; LT. JAMES A.
DINAPOLI; LT. VINCENT J. D'ONOFRIO;
LT. CHRIS M. MCCANN; and LT. PETER
J. REYNOLDS,

                                        Defendants.

Case No. 15-CV-7895 (KMK)

OPINION & ORDER

Appearances:

Michael A. Deem, Esq.
Michael H. Sussman, Esq.
Sussman & Watkins
Ossining, NY
*Counsel for Plaintiff*

Rondiene E. Novitz, Esq.
Cruser, Mitchell & Novitz LLP
Farmingdale, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Frank Mancuso ("Plaintiff") brings this Action against Mayor Timothy Cassidy

("Cassidy"), Fire Chief William T. Stone, Jr. ("Stone"), Village Administrator Robert A.

Yamuder ("Yamuder"), Lt. Robert R. Benkwitt, III ("Benkwitt"), Lt. James A. DiNapoli

("DiNapoli"), Lt. Vincent J. D'Onofrio ("D'Onofrio"), Lt. Chris M. McCann ("McCann"), Lt.

Peter J. Reynolds ("Reynolds"), and the Village of Pelham (the "Village," and collectively, "Defendants"), alleging civil rights and personal injury claims arising from his termination as a probationary firefighter employed by the Village of Pelham Fire Department (the "Fire Department"). (Dkt. No. 11.) Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Dkt. No. 13.) For the following reasons, the Motion is granted in its entirety.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

#### 1.  The Parties

At all times relevant to this Action, Plaintiff was a resident of the Village and employed by the Village as a probationary firefighter. (Am. Compl. ¶ 3 (Dkt. No. 11).) The Village is a political subdivision of the State of New York. (*Id.* ¶ 4.) During the events giving rise to the Amended Complaint, Cassidy was the duly elected mayor of the Village, (*id.* ¶ 5), Yamuder was the Village Administrator, (*id.* ¶ 6), and Stone was the Fire Chief of the Fire Department, (*id.* ¶ 7). Yamuder was contractually responsible for the direct control and command of the Fire Department's paid staff, (*id.* ¶ 6), and Stone was statutorily and contractually responsible for supervising its day-to-day operations and paid staff, (*id.* ¶ 7). At all relevant times, Benkwitt, DiNapoli, D'Onofrio, McCann, and Reynolds (collectively, the "Lieutenants") were employed by the Village as supervisory firefighters responsible for the supervision and training of firefighters and probationary firefighters. (*Id.* ¶ 8.) McCann also was employed as the training officer for the Fire Department, and D'Onofrio served as president of Local 2213 of the

International Association of Fire Fighters (the "Union"), the collective bargaining unit for all paid firefighters at the Fire Department.  (*Id.* ¶ 9.)

### 2.  Relevant Regulations

The National Fire Protection Association sets staffing requirements for the minimum number of firefighters to be staffed on each engine truck and ladder truck.  (*Id.* ¶¶ 17–18.)  At all relevant times, the Fire Department "had a custom and practice" of staffing the firehouse below that required level.  (*Id.* ¶ 20.)  "[T]his under-staffing . . . created an ongoing dangerous condition" that "increas[ed] the likelihood of accidents with vehicles, injuries to firefighters[,] and injury to the public at large."  (*Id.* ¶ 21.)

At all times relevant to this Action, the Westchester County Civil Service Rules limited Plaintiff's probationary term to a maximum of 52 weeks, required the Village to give Plaintiff at least one-week written notice prior to terminating his probationary status, and mandated that Plaintiff's appointment would become permanent if the Village retained him beyond his 52-week probationary term.  (*Id.* ¶¶ 22–24.)

Pursuant to New York State Village Law, Stone and the Lieutenants constituted the fire council for the Fire Department, and Stone's authority to terminate Plaintiff was subject to approval by two-thirds of the members of the fire council at its next meeting.  (*Id.* ¶¶ 29–30.)  Throughout 2014, "the fire council was defunct and never met."  (*Id.* ¶ 30.)  The Village of Pelham Board of Trustees (the "Board") "never enacted a local law authorizing itself to act in lieu of the fire council" and thus had authority only to review its decisions.  (*Id.* ¶¶ 32–33.)  Nevertheless, "by custom and practice, the Board . . . oversaw the affairs of the [F]ire [D]epartment."  (*Id.* ¶ 34.)

### 3.  Plaintiff's Allegations

The Board approved the appointment and hiring of firefighter candidate Michael Mullen ("Mullen") on August 6, 2013.  (*Id.* ¶ 39.)  As of August 9, 2013, Mullen had successfully completed all conditions of employment, except for passing the Fire Academy and his 52-week probationary period.  (*Id.* ¶ 43.)  Stone appointed Mullen as a probationary firefighter effective that day.  (*Id.* ¶ 44.)  Yamuder informed the Westchester County Department of Human Resources, which is responsible for civil service administration for the Fire Department, that Mullen's date of appointment was August 9, 2013.  (*Id.* ¶ 45.)  He also informed the New York State and Local Police and Fire Retirement System that Mullen's date of membership was August 9, 2013.  (*Id.* ¶ 46.)

As of September 13, 2013, Plaintiff had completed all conditions of employment, except for passing the Fire Academy and his 52-week probationary period.  (*Id.* ¶ 49.)  Stone appointed Plaintiff as a probationary firefighter effective September 13, 2013, (*id.* ¶ 50), but informed the Westchester County Department of Human Resources that Plaintiff's start date was September 17, 2013, (*id.* ¶ 51), and informed the New York State and Local Police and Fire Retirement System that Plaintiff's date of membership was September 23, 2013, (*id.* ¶ 53).  The Board ratified Plaintiff's appointment as a probationary firefighter on September 17, 2013, subject to the same conditions and terms as Mullen, and assigned Plaintiff to attend the Fire Academy starting on September 23, 2013, the same day as Mullen.  (*Id.* ¶¶ 55–56.)[1]

---

[1] Though addressed in detail below, the Court notes that a state court previously determined that Plaintiff's appointment became effective, and his probationary period commenced, on September 23, 2013.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") Ex. A, at 7 (Dkt. No. 14).)  That court subsequently adhered to its decision.  (*See* Defs.' Mem. Ex. E, at 6.)  In light of the Amended Complaint's express mentions of Plaintiff's prior Article 78 proceedings, (*see, e.g.*, Am. Compl. ¶ 220; *id.* ¶¶ 248–49; *id.* ¶ 251), the Court properly considers the related judgments as incorporated by reference, *see Leonard F. v. Isr.*

4

Mullen and Plaintiff attended the Fire Academy from September 23, 2013 through January 17, 2014.  (*Id.* ¶ 57.)  During that time, Stone "contacted [P]laintiff's instructors at the Fire Academy and actively sought information regarding [P]laintiff's performance or conduct to justify his termination."  (*Id.*)  He made no similar inquiries concerning Mullen.  (*Id.* ¶ 58.)  On January 16, 2014, an instructor at the Fire Academy told Plaintiff to "'watch [his] back' because . . . Stone, McCann, D'Onofrio, DiNapoli, Benkwitt, and/or Reynolds were looking for a reason to terminate him."  (*Id.* ¶ 61.)

Plaintiff successfully completed the Fire Academy's academic, physical, and medical requirements, and he earned a minimum rating of "satisfactory" in each category on his final evaluation.  (*Id.* ¶¶ 57, 60.)  Upon graduating from the Fire Academy on January 17, 2014, Plaintiff and Mullen were certified as firefighters by the New York State Office of Fire Prevention and Control as well as by the National Board on Fire Service Professional Qualifications.  (*Id.* ¶¶ 62–63.)

Following graduation, Plaintiff began two weeks of in-house training provided by McCann, D'Onofrio, DiNapoli, and Benkwitt.  (*Id.* ¶¶ 66–67.)  Yamuder informed the Board that "[P]laintiff and Mullen would be 'fully operational'" after those two weeks.  (*Id.* ¶ 72.)  On January 27, 2014, another firefighter told Plaintiff, "Watch out for DiNapoli.  He hates you." (*Id.* ¶ 75 (internal quotation marks omitted).)

Plaintiff was enrolled in an Emergency Medical Technician ("EMT") course through the Fire Department from January 2014 to May 2014.  (*Id.* ¶ 82.)  Pursuant to the collective

---

*Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (explaining that a court may consider "documents appended to the complaint or incorporated in the complaint by reference").  The Court also may take judicial notice of these documents as matters of public record.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

bargaining agreement between the Village and the Union (the "CBA"), a firefighter can receive straight time pay for time spent in the EMT course, with the permission of the Village Administrator and Fire Chief.  (*Id.* ¶ 83; *see also* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") Ex. D, art. VIII, § 3 (Dkt. No. 14).)[2]  "On information and belief," Mullen received this pay, (Am. Compl. ¶ 85), while "Stone and Yamuder denied [P]laintiff's request without explanation," (*id.* ¶ 84).  Plaintiff failed his EMT test in or about June 2014.  (*Id.* ¶ 92.)  Under the CBA, firefighters are entitled to additional pay for EMT certification but are not required to attain EMT certification as a condition of employment.  (*Id.* ¶ 93.)

Between January 17, 2014 and July 1, 2014, "not a single derogatory remark was entered in [P]laintiff's personnel or training records."  (*Id.* ¶ 81.)  On July 1, 2014, while responding to a call for assistance, Plaintiff rubbed the side of the ladder truck against a telephone pole, (*id.* ¶ 94), causing "slight damage" to the apparatus, (*id.* ¶ 95).  Plaintiff claims this incident resulted from the Fire Department's under-staffing, as otherwise Plaintiff would have had someone to act as a ground spotter.  (*Id.* ¶ 98.)[3]  The incident was Plaintiff's first with any Fire Department apparatus, (*id.* ¶ 97), and the apparatus was not taken out of service as a result, (*id.* ¶ 96).  Yet, the next day, McCann wrote an evaluation that "affirmatively misrepresented" the accident as "the *fourth* time [Plaintiff] 'crashed the [l]adder' truck" and exaggerated the damage caused.  (*Id.* ¶ 100.)  The memo further described Plaintiff's lack of initiative, motivation, and ability to

---

[2] The Court may also properly consider the CBA as a document incorporated in the Amended Complaint by reference.  *See Leonard F.*, 199 F.3d at 107.

[3] It bears mention that an instructor at the Fire Academy noted that Plaintiff needed "lots of extra time driving and getting comfortable with [the] large apparatus."  (Am. Compl. ¶ 60 (internal quotation marks omitted).)

follow directions, (*id.* ¶ 101), concluding with the recommendation "that he be terminated prior to the end of his probation," (*id.* ¶ 103 (internal quotation marks omitted)).

D'Onofrio wrote an evaluation that same day, (*id.* ¶ 104), "also affirmatively misrepresent[ing]" Plaintiff's lack of initiative and motivation, (*id.* ¶ 105), and concluding that Plaintiff could pose a safety risk, (*id.* ¶ 106).[4]  Stone subsequently wrote to Yamuder to recommend a full evaluation of Plaintiff to ensure that he was fit for the job.  (*Id.* ¶ 107.)[5] According to Plaintiff, this recommendation "was a means to justify the malicious and pre-planned attack on [P]laintiff's performance, conduct[,] and abilities as a firefighter, not a good faith conclusion based upon [his] demonstrated capabilities," (*id.* ¶ 108), although Plaintiff offers no motive to explain Stone's alleged view.  Also on July 2, 2014, Stone wrote a second memo to Yamuder, recommending that Plaintiff's probationary period be extended beyond one year.  (*Id.* ¶ 112.)  This same memo requested Plaintiff be disciplined for the accident that took place on July 1, 2014.  (*Id.* ¶ 113.)  The recommendations for discipline and an extension of the probationary period were "unprecedented and contrary to . . . past practice."  (*Id.* ¶ 114.)  On numerous prior occasions, other firefighters (including D'Onofrio and Reynolds) had accidents with the apparatus but faced no such response.  (*Id.* ¶¶ 116–29.)

On July 2, 2014, Yamuder sent an email to Board Trustee Volpe, (*id.* ¶ 130), repeating "Stone's fabrications and misrepresentations," (*id.* ¶ 131), without any effort to verify the

---

[4] D'Onofrio specifically explained that Plaintiff had demonstrated no "grasp" of "the seriousness of what [the Fire Department] may be called upon to do," and, as a result, "he may put himself and the safety of others in jeopardy."  (Am. Compl. ¶ 106 (internal quotation marks omitted).)

[5] In particular, Stone expressed his concern that Plaintiff might not have the ability to perform the duties of being a firefighter, particularly "under extreme circumstances in an [e]mergency [s]ervices environment."  (Am. Compl. ¶ 107 (internal quotation marks omitted).)

comments, (*id.* ¶ 132).  In an evaluation submitted to Stone the next day, DiNapoli "affirmatively misrepresented" Plaintiff's abilities and accident history.  (*Id.* ¶ 133.)  Benkwitt wrote a memo to Stone on July 5, 2014, providing similar assessments of Plaintiff's work ethic and skill.  (*Id.* ¶¶ 134–36.)

Plaintiff met with Stone, Yamuder, and D'Onofrio on July 10, 2014.  (*Id.* ¶ 139.)  During this meeting, D'Onofrio indicated that the Lieutenants would conduct more frequent assessments of Plaintiff "if needed," (*id.* ¶ 141 (internal quotation marks omitted)), but no such assessments were made thereafter, (*id.* ¶ 143).  Stone recommended to Plaintiff that he take a truck driver's course to assist him in driving the apparatus and urged Plaintiff to pay for the damage to the apparatus and this driving course.  (*Id.* ¶ 145.)  "Such recommendations were unprecedented within the fire service . . . ."  (*Id.* ¶ 146.)

On July 11, 2014, Yamuder advised Stone, Cassidy, and Trustee Volpe that he intended to extend Plaintiff's probationary period an additional six months.  (*Id.* ¶ 147.)  Two days later, Reynolds wrote an evaluation that "affirmatively misrepresented" Plaintiff's abilities, (*id.* ¶¶ 148–49), and "misrepresent[ed] [the Fire Department's] past practice in dealing with under-performing firefighters," (*id.* ¶ 150).[6]

On July 18, 2014, "McCann allegedly administered a 'hands-on' evaluation of [P]laintiff's abilities," (*id.* ¶ 153), then wrote to Stone "affirmatively misrepresenting" Plaintiff's

---

[6] In his evaluation, Reynolds wrote that Plaintiff had "shown very little interest in the job and no motivation toward any tasks," that "he has a poor attitude when performing tasks," that "he needs constant directives as to what needs to be done on a daily basis," and that Plaintiff's poor driving skills could jeopardize the safety of other firefighters.  (Am. Compl. ¶ 148 (internal quotation marks omitted).)  These comments were consistent with the views expressed by other evaluators.  (*See, e.g.*, *id.* ¶¶ 106–07.)

driving abilities, (*id.* ¶ 154).[7]  "McCann intentionally did not record the [evaluations]," which would have "dispelled [D]efendants' repeated misrepresentations of [P]laintiff's inability to perform or unsatisfactory performance."  (*Id.* ¶ 155.)

That same day, Stone provided Plaintiff a monthly probationary report for "June and July" that actually covered a six-month period.  (*Id.* ¶ 158.)  The form "expressly provided that it was to be used by a Company Officer," which Stone was not, (*id.* ¶ 159), and did not contain an "unsatisfactory" category, (*id.* ¶ 160).  "Use of the improper form" facilitated Defendants' efforts to "obscure their misrepresentations regarding [P]laintiff and propound their scheme to defraud."  (*Id.* ¶ 161.)  The report contained a combination of "above average," "average," "fair," and "poor" ratings, (*id.* ¶¶ 163–64), but the "poor" ratings "affirmatively misrepresent[ed] [P]laintiff's knowledge and ability," (*id.* ¶ 166).  Three officials from other fire departments who "personally observed or spoke with [P]laintiff . . . each wrote a letter explaining how [he] displayed competence, teamwork[,] and enthusiasm."  (*Id.* ¶ 169.)

On July 30, 2014, Benkwitt wrote to Stone "affirmatively misrepresent[ing]" Plaintiff's driving abilities and recommending that Plaintiff take a truck driving course to assist him in driving the apparatus.  (*Id.* ¶¶ 171–73.)  That same day, Yamuder informed Plaintiff of the extension of his probationary period from 12 to 18 months.  (*Id.* ¶ 174.)  The letter also provided that his "probation ha[d] been extended predicated on," inter alia, his receipt of "the *requisite* EMT certification."  (*Id.* ¶ 175.)

---

[7] In addition to critiquing Plaintiff's driving abilities, McCann opined that, in his 19 years of training firefighters, he had never seen an individual "so lacking in the basic skills necessary to be a competent firefighter," and that Plaintiff was "a danger to himself and other[s] around him."  (Am. Compl. ¶ 154 (internal quotation marks omitted).)

The following day, DiNapoli baselessly attributed a dead radio battery to Plaintiff, (*id.* ¶ 178), which engendered exaggerated censure from Defendants, (*id.* ¶¶ 180–81).  On August 27, 2014, McCann wrote that Plaintiff continued to be "a danger to his coworkers and the public." (*Id.* ¶ 184 (internal quotation marks omitted).)  The Lieutenants "purposely chose not to use [the pre-printed evaluation form] to evaluate [P]laintiff's performance conduct" as a means to avoid providing "specific and detailed" criticisms.  (*Id.* ¶ 185.)

On September 2, 2014, the Board approved the successful completion of probation for Mullen.  (*Id.* ¶ 187.)  It approved his date of hire as August 9, 2013 and his date of completion of probation as August 9, 2014, even though he did not begin the Fire Academy until September 23, 2013.  (*Id.*)

On September 4, 2014, Stone recommended Plaintiff be barred from driving "due to the cost factor of repairing the apparatus after accidents."  (*Id.* ¶ 188 (internal quotation marks omitted).)  In an email to Cassidy and Board Trustee Volpe sent the following day, Yamuder stated that Stone and the Lieutenants "raise[d] serious doubts" regarding Plaintiff's abilities.  (*Id.* ¶ 189 (internal quotation marks omitted).)  "Yamuder admitted to receiving [P]laintiff's evaluations but affirmatively misrepresented that [P]laintiff's performance 'is not improving and, in fact, continues to regress' . . . ."  (*Id.* ¶ 190.)  The relevant evaluation actually described Plaintiff's performance as "stationary."  (*Id.*)

On September 8, 2014, Plaintiff attended a meeting with Yamuder, Stone, and D'Onofrio.  (*Id.* ¶¶ 191–92.)  Stone presented Plaintiff with a monthly probationary report for "July and August," (*id.* ¶ 193), which actually covered 12 months of employment, (*id.* ¶ 194).  Again, Stone used a form that "expressly provided that it was to be used by a Company Officer," (*id.* ¶ 195), and did not have an "unsatisfactory" rating category, (*id.* ¶ 196), in order to "obscure

[Defendants'] misrepresentations regarding [P]laintiff and propound their scheme to defraud," (*id.* ¶ 197).  The report listed Plaintiff's "Date of Appointment" as September 13, 2013, (*id.* ¶ 198), and contained a combination of "above average," "average," "fair," and "poor" ratings, (*id.* ¶¶ 200–02), with the ultimate conclusion that Plaintiff had not shown he was competent to become a non-probationary firefighter, (*id.* ¶ 203).

At this same September 8, 2014 meeting, Stone terminated Plaintiff's employment with the Fire Department, (*id.* ¶ 205), without the mandated notice of at least one week or the Board's resolution concerning his conditions of employment, (*id.* ¶ 208).  Plaintiff's last day was to be September 15, 2014, (*id.* ¶ 206), but he was denied the opportunity to work his previously scheduled shift on September 12, 2014, (*id.* ¶ 210).  The Board met on September 16, 2014, its first meeting since September 2, 2014.  (*Id.* ¶ 212.)  The Board never voted to terminate Plaintiff or otherwise approved Stone's unilateral termination of Plaintiff.  (*Id.* ¶ 215.)  According to the Amended Complaint, Plaintiff's 52-week probationary period ended on September 13, 2014, and "his position ripened into a permanent position" due to "Defendants' fail[ure] to terminate him pursuant to the CBA, controlling law, applicable civil service rules[,] and the Board's conditions of employment."  (*Id.* ¶ 211.)

### 4.  Plaintiff's Article 78 Proceedings

On January 5, 2015, Plaintiff filed an order to show cause and verified petition in New York state court challenging his termination, pursuant to New York law ("Article 78 Petition"). (*Id.* ¶ 220.)  On February 5, 2015, the Village, Yamuder, and Stone filed an unverified motion to dismiss Plaintiff's Article 78 Petition.  (*Id.* ¶ 221.)  In support of this motion, Stone signed an affidavit falsely declaring that the Board had unanimously ratified his decision to terminate Plaintiff and that Plaintiff had begun working at the Fire Department in February 2014.  (*Id.*

¶¶ 222–23.)  The Amended Complaint alleges that these "fabrications were made with the specific intent and purpose of causing the Board and the [s]tate [c]ourt to rely on them and ratify [P]laintiff's wrongful termination."  (*Id.* ¶ 224.)

As a result of information obtained through Freedom of Information Law ("FOIL") requests, Plaintiff determined that additional respondents should be named in the Article 78 proceeding.  (*Id.* ¶ 247.)  On May 14, 2015, Plaintiff filed a motion to supplement the record with documents acquired through his FOIL requests.  (*Id.* ¶ 248.)  That same day, the state court granted the motion to dismiss Plaintiff's Article 78 Petition, (*id.* ¶ 249; *see also* Defs.' Mem. Ex. A), relying "in part on . . . Stone's misrepresentation that the Board approved [P]laintiff's termination by unanimous vote," (Am. Compl. ¶ 250).  Plaintiff filed a combined motion to reargue and motion to renew on May 22, 2015, which the state court "denied without reaching the merits of the information provided."  (*Id.* ¶ 251; *see also* Defs.' Mem. Ex. E.)

### B.  Procedural Background

This Action was commenced on September 7, 2015 in Westchester County Supreme Court and removed to this Court on October 6, 2015.  (Dkt. No. 3.)  Plaintiff filed his Amended Complaint on November 13, 2015.  (Dkt. No. 11.)  Pursuant to a Scheduling Order adopted by the Court on December 1, 2015, (Dkt. No. 12), Defendants filed their Motion and supporting papers on January 11, 2016, (Dkt. Nos. 13–15).  Plaintiff filed his opposition on February 1, 2016, (Dkt. No. 16), and Defendants filed their reply on February 16, 2016, (Dkt. No. 17).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

12

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013)

(explaining that a court "reviewing a dismissal pursuant to Rule 12(b)(6)" must "accept all factual allegations in the complaint as true" (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Lastly, a court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

1.  Count III:  Failure to Supervise

The Amended Complaint asserts claims under 42 U.S.C. § 1983 for failure to supervise against the Village, Cassidy, Yamuder, and Stone.  (*See* Am. Compl. ¶¶ 283–90.)  Specifically, Plaintiff alleges that the Village, Cassidy, and Yamuder failed to supervise both Stone and the fire council, (*id.* ¶¶ 284–85), as well as failed to enforce local and state laws, (*id.* ¶ 289).  He also

points to alleged failures "to require the [L]ieutenants to use the proper forms for their evaluations and reports," (*id.* ¶ 287), and "to inquire as to the veracity of the [L]ieutenants' statements" regarding Plaintiff's performance, (*id.* ¶ 288).[8]  According to the Amended Complaint, "[t]hese failings caused, to a reasonable degree of moral certainty, termination of the permanent appointment of . . . [P]laintiff without due process of law." (*Id.* ¶ 290.)  Defendants contend that Plaintiff has not pled sufficient facts to state such a claim under § 1983.  (*See* Defs.' Mem. 9–13.)

### a.  The Village

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on a § 1983 claim against a municipality, he must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  In order to prevail on a *Monell* claim, "a plaintiff is required to prove:  (1)

---

[8] To the extent that Plaintiff sought to base a § 1983 claim on the allegation that "[the Village], Cassidy, Yamuder[,] and Stone failed to inquire as to the veracity of the [L]ieutenants' statements," (Am. Compl. ¶ 288), the Court notes that district courts in the Second Circuit "have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action," *Grega v. Pettengill*, 123 F. Supp. 3d 517, 536 (D. Vt. 2015); *see also, e.g.*, *Vanderwoude v. City of N.Y.*, No. 12-CV-9046, 2014 WL 2592457, at *19 n.14 (S.D.N.Y. June 10, 2014) ("Allegations of a failure to investigate do not create an independent due process claim." (alteration and internal quotation marks omitted)), *reconsideration denied*, 2014 WL 5139341 (S.D.N.Y. Sept. 30, 2014); *McCaffrey v. City of N.Y.*, No. 11-CV-1636, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) (noting that "a 'failure to investigate' claim is not independently cognizable as a stand-alone claim").

actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Hunter*

*v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief

pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an

official policy or custom that caused injury and a direct causal connection between that policy or

custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Three requirements must be met before a municipality's failure to train or supervise constitutes

deliberate indifference to the constitutional rights of citizens. *See Walker v. City of N.Y.*, 974

F.2d 293, 297–98 (2d Cir. 1992); *Vasconcelloes v. City of N.Y.*, 12-CV-8445, 2016 WL 403474,

at *3 (S.D.N.Y. Jan. 28, 2016).  First, a plaintiff must show that a municipal policymaker knows

to a moral certainty that municipal employees will confront a given situation.  *See Walker*, 974

F.2d at 297; *Vasconcelloes*, 2016 WL 403474, at *3.  A plaintiff also must show that the

situation either presents the employee with a difficult choice of the sort that training or

supervision will make less difficult or that there is a history of employees mishandling the

situation.  *See Walker*, 974 F.2d at 297; *Vasconcelloes*, 2016 WL 403474, at *3.  Finally, a

plaintiff must show that the wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights. *See Walker*, 974 F.2d at 298; *Vasconcelloes*, 2016 WL 403474, at *3.

It is well established that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37; *see also Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)). Moreover, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

Plaintiff does not rely on, or allude to, any Village policy or custom that encourages or tolerates the adoption of false statements in the Fire Department's termination decisions.[9]

---

[9] The Amended Complaint's sole mention of a Village policy or custom pertains to an alleged "custom and practice" of understaffing the firehouse, (Am. Compl. ¶ 20), which, at best, relates only tangentially to Plaintiff's termination. Indeed, the heart of Plaintiff's case is that all the evaluations of Plaintiff's ability and effort were false. The claims about understaffing are thus red herring. In fact, Plaintiff asserts that his allegations "strongly suggest the existence of a policy decision to run [P]laintiff out of the Fire Department." (Pl.'s Opp'n to Mot. 12 (Dkt. No. 16).)

Rather, Plaintiff maintains that he has pled "a viable failure to supervise claim" whereby Village employees "falsely portray[ed] . . . [P]laintiff and thereby deprive[d] him of the right to fairly demonstrate his certified capacity to serve the [V]illage as a firefighter." (Pl.'s Opp'n to Mot. ("Pl.'s Opp'n") 13 (Dkt. No. 16); *see also id.* at 12 (alleging that the Village violated Plaintiff's constitutional rights by "fail[ing] to properly supervise [its] employees and then internaliz[ing] their baseless criticism").) "To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Treadwell v. Cty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016). At this stage, of course, a plaintiff need not prove these elements, but he must still plead enough facts to make out a plausible claim for relief. *See Twombly*, 550 U.S. at 555–57. Furthermore, although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a plaintiff cannot merely allege the existence of municipal policy or custom but must instead "allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists," *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement" (alteration in original) (internal quotation marks omitted)).

Plaintiff has fallen far short of meeting that burden here. First, as noted, the Amended Complaint is devoid of any specific allegations that could lead to the inference that an official

Village policy, practice, or custom caused Plaintiff's alleged constitutional injuries.[10]  Plaintiff merely sets forth an isolated series of incidents in which Village employees provided allegedly false statements about Plaintiff's competence and efforts, thereby causing his termination.  (*See, e.g.*, Am. Compl. ¶¶ 100–03, 105–07, 133–36, 148–50, 154.)  However, *Monell* liability does not derive from individual incidents of wrongdoing by municipal employees.  *See Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) (noting that a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees"); *Treadwell*, 2016 WL 1268279, at *4 (holding that the plaintiff "failed to sufficiently state a *Monell* claim" where the complaint lacked "any specific allegations that could lead to the inference that an official [municipal] policy, practice, or custom caused [the] [p]laintiff's alleged constitutional injuries" but instead merely "detail[ed] an isolated series of incidents").[11]

Second, the Amended Complaint fails to plead any facts that could lead to the inference that the Village displayed deliberate indifference to the supervision of its employees, and that this deliberate indifference caused Plaintiff's alleged injuries.  Plaintiff does not set forth any

---

[10] Plaintiff attempts to make much of the fact that the Amended Complaint is "lengthy." (Pl.'s Opp'n 12.)  However, the standard under Rule 12(b)(6) is whether Plaintiff's allegations plausibly state a legal claim, not whether Plaintiff has made enough allegations.  *See Iqbal*, 556 U.S. at 679–70.

[11] The sole case cited by Plaintiff is not to the contrary.  (*See* Pl.'s Opp'n 12 (citing *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62–63 (2d Cir. 2014)).)  In *Matusick*, the Second Circuit "conclude[d] that there were sufficient facts in the record such that a reasonable fact-finder could conclude, as the jury in fact did, that the [wrongdoing] rose to the level of a custom, policy, or practice," noting that the plaintiff's supervisors failed to act "in the face of known and pervasive [wrongdoing]."  757 F.3d at 62–63.  Here, Plaintiff has neither pled such "frequent and severe" misconduct, *id.* at 63, nor adequately pled that municipal officials "knew" that the alleged misrepresentations were, in fact, misrepresentations depriving Plaintiff of constitutional rights, *id.*; *see also Jones*, 691 F.3d at 81 ("'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (alteration and some internal quotation marks omitted)).

allegations of constitutional violations committed by Village employees against individuals other than himself.  For example, he fails to allege any prior bad acts like those alleged here that should have put the Village on notice of misconduct at the Fire Department.  *See Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *6 (S.D.N.Y. Feb. 29, 2016) (dismissing § 1983 claim in the absence of "any allegations that the [municipality] was on notice of other similar constitutional violations and, in the face of such notice, failed to act"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (holding that the plaintiff failed to state a claim where the allegations were "insufficient to support an inference that the [municipality] was 'on notice' of misconduct by its [employees], but failed to act, such that the [municipality] exhibited deliberate indifference to the constitutional rights of its citizens").  As highlighted above, a single sequence of unconstitutional conduct is insufficient to make out a claim of an unconstitutional custom.  *See Tuttle*, 471 U.S. at 823–24; *Tieman*, 2015 WL 1379652, at *12; *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 307 (S.D.N.Y. 2015) (dismissing § 1983 claims against a municipality where "the sum total of [the plaintiffs'] allegations" concerned their belief that several officials acted improperly).  Plaintiff's singular experience, even if accepted as true, will not suffice to state a *Monell* claim for failure to supervise.[12]

---

[12] Any claims against Cassidy, Yamuder, and Stone in their official capacities are treated as a claim against the Village as their employer.  *See Monell*, 436 U.S. at 690 n.55 (explaining that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").  Because the Village is named as a Defendant in this Action, the official capacity claims against Cassidy, Yamuder, and Stone are dismissed as redundant.  *See Lawson v. Broome Cty.*, No. 14-CV-195, 2016 WL 427898, at *6–7 (N.D.N.Y. Feb. 3, 2016) (dismissing "official capacity claims against [a county employee] as redundant" and dismissing claims against the county under *Monell*); *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 251 (N.D.N.Y. 2014) (dismissing "as redundant" "the official capacity claims against the individual defendants" where the municipality was "named as a defendant in th[e] action and sued under *Monell*").

b.  Cassidy, Yamuder, and Stone

As noted above, "defendants cannot be held liable under a theory of respondeat superior" in actions brought under § 1983.  *Quezada v. Roy*, No. 14-CV-4056, 2015 WL 5547277, at *7 (S.D.N.Y. Sept. 18, 2015) (citing *Monell*, 436 U.S. at 691).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the [law]," *Iqbal*, 556 U.S. at 676; *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) ("[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." (internal quotation marks omitted)).  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (some internal quotation marks omitted) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).  Supervisory personnel may be considered personally involved if they (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) were "grossly negligent in supervising subordinates who committed the wrongful acts"; or (5) "exhibited deliberate indifference" to individuals' rights by failing to act on information indicating that the violation was occurring.  *Grullon*, 720 F.3d at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Samuels v.*

21

*Fischer*, — F. Supp. 3d —, 2016 WL 827781, at *5–6 (S.D.N.Y. Mar. 2, 2016) (same).  "An

allegation that a defendant failed to adequately train or supervise subordinates implicates the

fourth *Colon* factor, i.e., that 'the defendant was grossly negligent in supervising subordinates

who committed the wrongful acts.'"  *Samuels*, 2016 WL 827781, at *7 (quoting *Colon*, 58 F.3d

at 873).  To support a finding of personal involvement on that basis, a

> [p]laintiff must show that the defendant knew or should have known that there was
> a high degree of risk that his subordinates would behave inappropriately, but either
> deliberately or recklessly disregarded that risk by failing to take action that a
> reasonable supervisor would find necessary to prevent such a risk, and that failure
> caused a constitutional injury to [the] [p]laintiff.

*Id.* at *8 (alteration and internal quotation marks omitted); *see also Kucera v. Tkac*, No. 12-CV-

264, 2013 WL 1414441, at *6 (D. Vt. Apr. 8, 2013) (noting an "alleged failure [to supervise or

train] [would] satisfy the fourth *Colon* factor if [the officials] 'knew or should have known that

there was a high degree of risk that subordinates would behave inappropriately[,] but either

deliberately or recklessly disregarded that risk by failing to take action that a reasonable officer

would find necessary to prevent such a risk'" (alterations omitted) (quoting *Poe v. Leonard*, 282

F.3d 123, 142 (2d Cir. 2002))).

Once again, Plaintiff's allegations fail to pass muster.  For one, the Amended Complaint

contains no allegations that Cassidy actually participated in any wrongdoing.  Rather, the only

specific allegations about Cassidy are that he "was the duly elected Mayor of the Village," (Am.

Compl. ¶ 5), and that he received various communications regarding Plaintiff, (*see id.* ¶¶ 142,

147, 189).  Moreover, Plaintiff's generalized contentions that Cassidy "failed to supervise"

Village employees, (*see* Am. Compl. ¶¶ 284–86), are insufficient to establish his personal

involvement, *see McRae v. Gentile*, No. 14-CV-783, 2015 WL 7292875, at *5 (N.D.N.Y. Oct.

20, 2015) ("Vague and conclusory allegations that a supervisor negligently failed to train or

supervise subordinate employees are not sufficient to establish personal involvement so as to give rise to personal liability." (internal quotation marks omitted)), *adopted by* 2015 WL 7300540 (N.D.N.Y. Nov. 18, 2015).  Therefore, Count III cannot go forward against Cassidy. *See Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing § 1983 claims where the complaint contained "no allegations whatsoever indicating [the defendants] were personally involved in the purported violations"); *Perri v. Bloomberg*, No. 06-CV-403, 2007 WL 2891332, at *9 (E.D.N.Y. Sept. 28, 2007) (dismissing § 1983 claims against the mayor because the complaint "allege[d] no facts regarding [his] personal involvement").[13]

As for Yamuder and Stone, the Amended Complaint does include allegations that they "affirmatively misrepresented" Plaintiff's performance and abilities.  (*See, e.g.*, Am. Compl. ¶ 166 (alleging that Stone's evaluation "affirmatively misrepresent[ed] [P]laintiff's knowledge and ability"); *id.* ¶ 190 (alleging that Yamuder "affirmatively misrepresented . . . [P]laintiff's performance").)  However, "[i]n addition to personal involvement, a plaintiff asserting a claim of failure to supervise must allege deliberate indifference on the part of the defendant—not mere negligence—as well as a causal relationship between the failure to supervise and the alleged

---

[13] Notably, Plaintiff's opposition defends his failure-to-supervise claim only as to Stone and Yamuder, (*see* Pl.'s Opp'n 12–13), notwithstanding Defendants' argument that the Amended Complaint failed to allege "that *Cassidy* . . . actually participated in any wrongdoing," (Defs.' Mem. 12 (emphasis added).)  Plaintiff thus abandoned this claim, *see Cruz v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1335, 2014 WL 2547541, at *7 (S.D.N.Y. June 4, 2014) (deeming a claim abandoned where the "[p]laintiff declined to respond to [the] [d]efendant's argument that the [claim should be dismissed]"); *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting that a "[c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"), which provides an additional basis to dismiss the cause of action as to Cassidy, *see Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) (granting motion to dismiss where the plaintiff did not respond to the defendants' argument that the claim should be dismissed).

deprivation." *Grega v. Pettengill*, 123 F. Supp. 3d 517, 555 (D. Vt. 2015) (alteration and internal

quotation marks omitted).  Plaintiff has not pled those requisite elements here.  Indeed, while the

Amended Complaint alleges participation in wrongdoing, there are no facts to satisfy the second

requirement—i.e. that Yamuder and Stone were "grossly negligent in supervising subordinates

who committed the wrongful acts." *Colon*, 58 F.3d at 873; *see also Pettus v. Morgenthau*, 554

F.3d 293, 300 (2d Cir. 2009) (affirming dismissal of "a failure-to-supervise claim" where the

complaint "lack[ed] any hint that [the defendant] acted with deliberate indifference to the

possibility that his subordinates would violate [the plaintiff's] constitutional rights"); *Grega*, 123

F. Supp. 3d at 554 (dismissing failure to supervise claim in the absence of allegations "that [the

defendant] was grossly negligent in supervising the [subordinate's] work").[14]  The Amended

Complaint is devoid of any allegations specific to whom they failed to train.  *See MC v.

Arlington Cent. Sch. Dist.*, No. 11-CV-1835, 2012 WL 3020087, at *6 (S.D.N.Y. July 24, 2012)

(suggesting that a plaintiff must "specify which actors were improperly supervised" to state a

claim under § 1983).  Thus, Plaintiff has failed to state a claim of failure to supervise against

Yamuder and Stone.  Count III is thereby dismissed.

## 2.  Count VII:  Class-of-One Equal Protection Claim

As the basis for a "class of one" equal protection claim, the Amended Complaint alleges

that Defendants violated Plaintiff's rights under the Fourteenth Amendment "[b]y subjecting

---

[14] Curiously, Plaintiff's opposition points only to factual allegations concerning Yamuder's and Stone's direct participation in "the false characterizations of . . . [P]laintiff." (Pl.'s Opp'n 12–13 (alleging that "Stone mimicked the false characterizations of . . . [P]laintiff being made by his lieutenants" and that "Yamuder relied on Stone's repetitions of these prevarications).)  However, the alleged misrepresentation made by Stone and Yamuder could only serve as the basis for a failure to supervise claim as to their own supervisors, and the Amended Complaint sets forth no such cause of action.  (*Cf.* Am. Compl. ¶¶ 283–90 (alleging failure to supervise claims against the Village, Cassidy, Stone, and Yamuder).)

[him] to highly disparate treatment and standards which contravene those of their profession and those of the [Fire] [D]epartment . . . ."  (Am. Compl. ¶ 297.)  Defendants respond "that the 'class of one' theory does not apply in the public employment context," and, in any event, "the Amended Complaint fails to plausibly allege that Plaintiff was treated differently from any similarly situated individual."  (Defs.' Mem. 16.)

Where a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an equal protection claim pursuant to one of two theories:  "class of one," or selective enforcement.  *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 359 (S.D.N.Y. 2014).  Class-of-one claims exist when a plaintiff alleges that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (same).  Such "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted); *see also Crippen v. Town of Hempstead*, No. 07-CV-3478, 2013 WL 1283402, at *6 (E.D.N.Y. Mar. 29, 2013) (noting that plaintiffs seeking to state a class-of-one claim "must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects" (italics and internal quotation marks omitted)).  However, a class-of-one claim is not cognizable in the public employment context.  *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605–10 (2008); *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (holding that, in light of *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation . . . based on a 'class of one' theory of liability"); *Epstein v. Cty. of Suffolk*, No. 14-CV-937, 2015 WL 5038344, at *11 (E.D.N.Y. Aug. 26, 2015) ("[T]he Equal Protection Clause does

not apply to public employees . . . who are asserting a class-of-one theory of discrimination."); *Zane v. City of N.Y.*, No. 11-CV-4961, 2014 WL 972032, at \*10 (E.D.N.Y. Mar. 13, 2014) (holding that the plaintiff could not "proceed with a class of one argument because the Second Circuit has confirmed that the Supreme Court's decision in *Engquist* . . . made it unavailable in the public employment context").

As "a probationary firefighter employed by the Village," (Am. Compl. ¶ 1), and thus a public employee, Plaintiff cannot state a valid class-of-one claim against Defendants, *see Heusser v. Hale*, 777 F. Supp. 2d 366, 384 (D. Conn. 2011) (holding that plaintiffs that are deemed "to be 'public employees' . . . have no valid Equal Protection 'class-of-one' claim"); *O'Hanlon v. City of Danbury*, No. 07-CV-1727, 2009 WL 586278, at \*2–3 (D. Conn. Mar. 9, 2009) (dismissing class-of-one claims brought by plaintiffs who were denied employment with the town fire department). Plaintiff appears to concede as much, having failed to respond to Defendants' argument that *Engquist* bars this cause of action, (*see generally* Pl.'s Opp'n), even while asserting that the Amended Complaint states a viable selective enforcement claim, (*see id.* at 14–18).[15] Count VII is thereby dismissed.

### 3. Count VIII: Selective Enforcement Equal Protection Claim

Plaintiff also alleges that "Defendants treated [him] in a highly selective manner" by "repeatedly applying standards to his conduct which violated the past practices and standards of the [Fire] [D]epartment." (Am. Compl. ¶ 299.) Defendants argue that the Amended Complaint has not sufficiently pled the existence of others similarly situated and contains "not a single allegation" that "connotes a motivation" for the alleged misconduct. (Defs.' Mem. 18.)

---

[15] That *Engquist* was decided eight years ago makes the decision by Plaintiff's counsel to include this claim curious, at best.

An equal protection claim premised on selective enforcement requires a showing that:

(1) [the plaintiff], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.

*Witt*, 992 F. Supp. 2d at 362 (alteration omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement," *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999), though there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory, *see Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4 (E.D.N.Y. Mar. 25, 2015) (recognizing the "split regarding the definition of 'similarly situated' in selective enforcement and class-of-one cases").  While some courts evaluate whether a comparator is similarly situated under the same standard used in "class of one" equal protection claims, *see, e.g.*, *Kamholtz v. Yates Cty.*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (noting that "[t]he level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high" in both the selective enforcement and "class of one" contexts (internal quotation marks omitted)), *aff'd*, 350 F. App'x 589 (2d Cir. 2009), others apply a less demanding standard to selective enforcement claims, *see, e.g.*, *Tower Props. LLC v. Vill. of Highland Falls*, No. 14-CV-4502, 2015 WL 4124499, at *8 (S.D.N.Y. July 7, 2015) (adopting "a less stringent standard" whereby the "[p]laintiff must identify comparators whom a prudent person would think were roughly equivalent" (alterations and internal quotation marks omitted)); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (explaining that a

selective enforcement claim requires a plaintiff and comparator to be "similarly situated in all material respects" (internal quotation marks omitted)).

Even applying the less stringent standard, the Court finds that Plaintiff has failed to adequately allege others "similarly situated."[16]  Although the analysis of whether a comparator is similarly situated may present a question of fact inappropriate to decide at the motion-to-dismiss stage, *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 705 n.17 (S.D.N.Y. 2011), here the Amended Complaint does not present a plausible claim, *see Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'" (quoting *Mosdos*, 815 F. Supp. 2d at 697–98)).  Plaintiff asserts that "there were no discernible differences between [his] conduct or performance and that of any other probationary firefighter

---

[16] The Second Circuit has recognized that there is a question as to whether selective enforcement claims in the public employment context survived *Engquist*, but it has not yet decided the issue.  *See Kamholtz v. Yates Cty.*, 350 F. App'x 589, 591 (2d Cir. 2009); *Porr v. Daman*, 299 F. App'x 84, 86 (2d Cir. 2008) (citing *Engquist* and concluding that "a public employee does not state a claim under the Equal Protection Clause by alleging that he or she was arbitrarily treated differently from other similarly situated employees unless the different treatment was based on the employee's membership in any particular class").  Thus, "the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of *Engquist*."  *Sharpe v. City of N.Y.*, No. 11-CV-5494, 2013 WL 2356063, at *4 n.6 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014).  Despite the persuasive reasoning of the districts courts that have held selective enforcement claims barred in the public employment context, *see, e.g.*, *Heusser*, 777 F. Supp. 2d at 386–87 (noting that lower courts have "consistently moved" in the direction of barring selective enforcement claims not involving protected class membership for public employees); *Emmerling v. Town of Richmond*, No. 09-CV-6418, 2010 WL 2998911, at *12–13 (W.D.N.Y. July 27, 2010) (dismissing a public employee's selective enforcement claim as barred by *Engquist* and, in the alternative, for failure to state a claim upon which relief could be granted), *aff'd*, 434 F. App'x 10 (2d Cir. 2011), this Court, in an abundance of caution, will address the merits of Plaintiff's selective enforcement claim.

in the [Fire Department], including Mullen's," (Am. Compl. ¶ 89; *see also id.* ¶ 90 (alleging that "Plaintiff's qualifications as a [f]irefighter were equivalent to those of any other [f]irefighter in the [Fire Department], including Mullen")), but "conclusory allegations of selective treatment are insufficient to state an equal protection claim," *Mosdos*, 815 F. Supp. 2d at 698 (internal quotation marks omitted).  Beyond that, the Amended Complaint does little more than allege general comparisons between the treatment of Plaintiff and Mullen, (*see, e.g.*, Am. Compl. ¶¶ 57–58, 85, 278), ultimately failing to offer any "facts showing that [Plaintiff] is similarly situated to other persons with respect to the specific . . . incidents that are alleged to be examples of differential treatment," *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011); *see also Butler*, 2015 WL 1396442, at *5 (dismissing equal protection claim where the "[c]omplaint only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff," yet offered "no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *6 (E.D.N.Y. Mar. 20, 2014) (dismissing selective enforcement claim where the plaintiff's allegations lacked "any facts showing that [certain individuals] are similarly situated to [the] [p]laintiff" (emphasis omitted)); *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others are allowed to get permits, but it [wa]s unclear whether those properties have any circumstances similar to [the] [p]laintiffs").[17]

---

[17] In defending this cause of action in his opposition, Plaintiff merely cites to various allegations of differential treatment, without pointing to facts that show others were similarly situated.  (*See* Pl.'s Opp'n 14–15.)  Indeed, aside from his bare conclusion "that Plaintiff and Mullen performed similarly," (*id.* at 15), he offers no further guidance as to how the two were similarly situated.

To the contrary, the Amended Complaint itself suggests Mullen and Plaintiff are not truly similar.  According to the allegations contained therein, Mullen did not fail the EMT test, (*cf.* Am. Compl. ¶ 92), or have any accidents with a ladder truck, (*cf. id.* ¶ 94).[18]  Nor does Plaintiff plead that evaluations of Mullen reported that he too lacked initiative, performed poorly, or posed a safety risk.  (*Cf. id.* ¶¶ 101, 103, 105–07, 133–34.)  As such, the two cannot be said to be similar for purposes of the Equal Protection Clause.  *See McGuire v. Vill. of Tarrytown*, No. 08-CV-2049, 2011 WL 2623466, at *8 (S.D.N.Y. June 22, 2011) ("Since their conduct was distinguishable, [the] [p]laintiff and the [comparators] are not similarly situated, and [the] [p]laintiff's equal protection claim must fail."), *reconsideration denied*, 2011 WL 4347175 (S.D.N.Y. Sept. 14, 2011); *Spinks v. Orleans Cty.*, No. 10-CV-745, 2011 WL 2491001, at *7 (W.D.N.Y. June 22, 2011) (concluding that the plaintiff failed to show the comparators were similarly situated despite allegations that they had certain characteristics in common); *Shekhem' El-Bey v. City of N.Y.*, 419 F. Supp. 2d 546, 551 (S.D.N.Y. 2006) ("That [the] plaintiff, whose misconduct so far surpassed that of his co-workers, was terminated . . . while they were permitted to maintain their positions hardly amounts to a showing of selective enforcement.").[19]

---

[18] While EMT certification may not be a condition of employment, (*see* Am. Compl. ¶ 93), Mullen's ability to pass the test nonetheless marks another difference from Plaintiff and further distinguishes their respective qualifications.

[19] Otherwise, the Amended Complaint makes only a half-hearted attempt to compare Plaintiff with other firefighters who had driving accidents but were not disciplined.  (*See* Am. Compl. ¶¶ 116–29.)  This single parallel is a far cry from suggesting they "were roughly equivalent," *Tower Props.*, 2015 WL 4124499, at *8 (internal quotation marks omitted), as the evaluations of Plaintiff indicate that he was ultimately terminated for reasons in addition to his poor driving skills, (*see, e.g.*, Am. Compl. ¶¶ 106–07, 148, 154; *cf.* Defs.' Mem. Ex. A, at 9 (arguing that the "evidence reveals that [Plaintiff] persistently demonstrated an unsatisfactory work performance, which is repeatedly reflected in his evaluation reports from his supervisors," who noted "[Plaintiff's] lackadaisical attitude toward his work-related responsibilities, his lack of motivation and initiative to learn, his repeated failure to comply with firefighter rules and regulations, safety risks to his fellow firefighters implicated by his work-related shortcomings[,]

Because the Amended Complaint fails to meet even the lesser standard of "similarly situated," Plaintiff cannot maintain an equal protection claim under either a selective enforcement or a "class of one" theory.

Even assuming, arguendo, that the Amended Complaint had satisfied this first element, Plaintiff's selective enforcement claims would fail nonetheless. Though "[t]he 'key issue' in such a claim is impermissible motive," *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 158 (S.D.N.Y. 2002) (quoting *Lisa's Party City Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999)), the Amended Complaint sets forth no allegations as to why Defendants would treat Plaintiff differently than Mullen (or any other probationary firefighter, for that matter), *see Missere*, 826 F. Supp. 2d at 565 (dismissing claim where "[t]he [c]omplaint nowhere alleges any facts that would explain what motive the [defendants] might have had for [the conduct at issue]"); *Hi Pockets*, 192 F. Supp. 2d at 158 (holding that "[w]ithout an allegation identifying a malicious intent to harm [the plaintiff]," the complaint failed to state a selective enforcement claim).

Plaintiff's unsubstantiated assertion that "plainly the Amended Complaint alleges . . . these disparities in treatment were motivated by bad faith" does nothing to salvage his claim. (Pl.'s Opp'n 15.) For one, the finding in the Article 78 proceeding precludes this argument, as the state court concluded that Plaintiff failed "to show that [Defendants'] decision to terminate him as a probationary firefighter . . . was made in bad faith, in violation of statutory or decisional law, or for unconstitutional or illegal reasons." (Defs.' Mem. Ex. A, at 10.) In any event, "a plaintiff must allege more than mere conclusory allegations to establish malicious or

---

and his patent inability to safely operate the fire ladder truck")). The Amended Complaint, however, sets forth no other allegations that could form the basis for an adequate comparison between Plaintiff and any of those firefighters.

bad faith intent on behalf of a defendant to harm the plaintiff," *Norwood v. Salvatore*, No. 12-CV-1025, 2014 WL 203306, at *5 (N.D.N.Y. Jan. 17, 2014); *see also Taylor v. Norwalk Cmty. Coll.*, No. 13-CV-1889, 2015 WL 5684033, at *21 (D. Conn. Sept. 28, 2015) ("Boilerplate allegations regarding bad intent, without more, have been viewed as failing to support a selective enforcement claim." (alteration and internal quotation marks omitted)), but the Amended Complaint has not done so.  In this regard, again, it is telling that the Amended Complaint proffers no reason why Defendants would act in bad faith toward him.  There is no suggestion that Plaintiff's race, religion, or politics views—let alone any pre-existing animus—would motivate Defendants to want to prevent Plaintiff from being a firefighter.

Because Plaintiff fails to set forth any factual allegations to plausibly show (1) that there were similarly situated individuals treated differently, and (2) that Defendants acted with malicious or bad faith intent to injure him, Count VIII is dismissed.

### 4.  Count IX:  Procedural Due Process Claim

According to the Amended Complaint, the Village and Stone "denied [P]laintiff his right to a pre[-] or post[-]deprivation hearing without excuse or justification."  (Am. Compl. ¶ 301.) Defendants seek to dismiss this procedural due process claim on the basis that Plaintiff had no property interest in his employment and that he nonetheless was afforded due process.  (*See* Defs.' Mem. 18–23.)

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1; *see also Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 380 (S.D.N.Y. 2014) (same).  In order to plead a violation of procedural due process, "a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was

effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (alteration, emphasis, and internal quotation marks omitted); *see also Chrebet v. Cty. of Nassau*, 24 F. Supp. 3d 236, 244 (E.D.N.Y. 2014) (same), *aff'd*, 606 F. App'x 15 (2d Cir. 2015). "The threshold issue is always whether the plaintiff has a property . . . interest protected by the Constitution." *Morales v. New York*, 22 F. Supp. 3d 256, 276 (S.D.N.Y. 2014) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)). "Such property interests cannot be found on the face of the Constitution, but rather 'are created, and their dimensions are defined by, existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits.'" *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (alterations omitted) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). In "determining whether a plaintiff has a claim of entitlement," courts thus "focus on the applicable statute, contract[,] or regulation that purports to establish [it]." *Brown v. New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013) (quoting *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)). However, "[a] 'unilateral expectation' is not sufficient to establish a constitutionally protected property right." *Looney*, 702 F.3d at 706 (quoting *Roth*, 408 U.S. at 577). "Rather, a plaintiff must have 'a legitimate claim of entitlement to' the alleged property interest." *Id.* (quoting *Roth*, 408 U.S. at 577).

In this case, the "threshold issue" of whether Plaintiff has a property interest was already determined in the prior Article 78 proceeding. Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d

90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)).  Federal courts must give the same preclusive effect to state court judgments as would be given by courts of the state itself, *see Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012), which means that New York law governs the preclusive effect of a prior Article 78 judgment on a § 1983 action in federal court, *see Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *6 (S.D.N.Y. Mar. 27, 2015).[20]  Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Hayes*, 853 F. Supp. 2d at 425 (same).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding."  *Colon*, 58 F.3d at 869; *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

In the prior Article 78 proceeding, the state court held that Plaintiff was "an 'at will' employee" at the time of his termination, (Defs.' Mem. Ex. A, at 8), specifically rejecting

---

[20] Although "New York's claim preclusion rule does not apply" where "a [§] 1983 action is brought by an unsuccessful Article 78 plaintiff," collateral estoppel will bar such a plaintiff from re-litigating issues that were fully addressed in that prior judgment.  *Vargas v. City of N.Y.*, 377 F.3d 200, 205 (2d Cir. 2004); *see also Watkins v. Annucci*, No. 02-CV-4475, 2006 WL 722005, at *4 (S.D.N.Y. Mar. 22, 2006) ("[A] judgment in an Article 78 proceeding precludes relitigation of those issues already decided in that judgment.").

Plaintiff's contention that his employment commenced on September 13, 2013, (*id.* at 7).[21] Based on evidence submitted by the Parties, the state court found that Plaintiff's appointment was approved by the Board on September 17, 2013 and did not become effective until September 23, 2013.  (*Id.*)  To that end, the state court concluded "that [Plaintiff] was properly terminated without a hearing or statement of reasons . . . within his probationary period[,] which had commenced less than l2 months earlier on September 23, 2013."  (*Id.* at 8.)

Plaintiff does not disagree that the issue of his start date was decided at the Article 78 proceeding, but instead argues that he did not have "a full and fair opportunity to litigate[] the [V]illage's actual practice with regard to the appointment dates of firefighters and whether . . . their date of appointment commences [upon] completion of all preconditions to employment . . . ."  (Pl.'s Opp'n 17.)[22]  This assertion, however, plainly lacks merit, given that he submitted a petition supported by exhibits as well as a reply to Defendants' opposition papers. *See Ortiz*, 2015 WL 1427247, at *7 (finding an assertion "that [the plaintiff] was not given a full and fair opportunity to litigate the claims in the prior [Article 78] proceeding . . . would be without merit, given that he submitted a petition supported by exhibits, as well as a reply to the respondents' opposition papers"); *Fortunatus v. Clinton Cty.*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) (concluding that "[the plaintiff] cannot gainsay that he had a full and fair opportunity to litigate his claims" where, "[i]n addition to his lengthy petition, [the plaintiff]

---

[21] The Amended Complaint nevertheless continues to allege that Plaintiff's employment commenced on September 13, 2013.  (*See, e.g.*, Am. Compl. ¶ 51; *id.* ¶ 211.)

[22] Because Plaintiff "confines his argument to the 'full opportunity' element of the collateral estoppel test and does not argue that 'identicality and decisiveness" of the issues are lacking," he "[a]rguably . . . has conceded the point."  *Haygood v. Unity Health Sys.*, No. 14-CV-6474, 2015 WL 3484943, at *6 (W.D.N.Y. June 2, 2015) (citation omitted), *aff'd sub nom. Haygood v. ACM Med. Lab., Inc.*, 642 F. App'x 27 (2d Cir. 2016).

submitted sworn affidavits, exhibits, and a memorandum of law in support of his claims, all of which would substantiate a full opportunity to litigate"); *Carroll v. Callanan*, No. 05-CV-1427, 2008 WL 170204, at *3 (N.D.N.Y. Jan. 16, 2008) (holding that "[the plaintiff] had a full and fair opportunity to [litigate] by raising the issues . . . in multiple documents submitted during the course of his Article 78 proceeding").  Plaintiff also submitted a motion seeking leave to reargue and renew the Article 78 judgment, (*see* Defs.' Mem. Ex. E), which further substantiates a full opportunity to litigate, *see Crosland v. City of N.Y.*, 140 F. Supp. 2d 300, 310–11 (S.D.N.Y. 2001) (noting that the plaintiff "filed a motion for reargument" and finding that he had an adequate opportunity to litigate in a prior Article 78 proceeding), *aff'd sub nom. Crosland v. Safir*, 54 F. App'x 504 (2d Cir. 2002).  Indeed, the state court plainly addressed the issue of when a firefighter's "date of appointment commences," highlighting the appointment letter from Defendants that advised Plaintiff that "September 23, 2013 [would] effectively be [his] hire date," conditioned upon approval of the Board "prior to [his] effective date of hire."  (Defs.' Mem. Ex. A, at 7 (internal quotation marks omitted).)

The Amended Complaint vaguely suggests Plaintiff has new evidence that was unavailable to him at the time of the Article 78 proceeding.  Yet, though Plaintiff alleges that he obtained additional documents after the Article 78 judgment, "in particular a copy of the two-week in-house training schedule for training [P]laintiff and Mullen on the [Fire Department] apparatus," (Am. Compl. ¶ 248), he fails to argue that such information is "new" rather than merely repetitive of the allegations presented in the prior proceedings, *see T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-451, 2010 WL 4275310, at *6–7 (E.D.N.Y. Feb. 16, 2010) (finding that the plaintiff had a full and fair opportunity to litigate its claim in the Article 78 proceeding where "[t]he 'new' facts asserted by [the] plaintiff are merely additional examples of the conduct of

36

which [the] plaintiff has complained"); *cf. New Eng. Health Care Emps. Welfare Fund v. iCARE Mgmt., LLC*, 886 F. Supp. 2d 82, 96 (D. Conn. 2012) (noting that "the courts are necessarily reluctant to allow relitigation of claims where," inter alia, "the plaintiff had not been entirely barred from presenting evidence on the merits").  Nor does he give any indication as to how an in-house training schedule would be dispositive as to the date his employment commenced.  *Cf. Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 882 F. Supp. 2d 396, 404–05 (E.D.N.Y. 2012) (finding that collateral estoppel did not apply where "relevant documents" were obtained after the prior proceeding and "there [wa]s a reasonable likelihood that the new evidence, had it been available . . . , could have changed the result in favor of [the] plaintiff").  As Plaintiff thus has not sustained his burden of establishing the lack of an adequate opportunity to litigate in the prior proceeding, collateral estoppel applies to the finding that he remained a probationary employee at the time of his termination.  *See Colon*, 58 F.3d at 869; *Ryan v. N.Y. Tel. Co.*, 467 N.E.2d 487, 491 (N.Y. 1984) ("[T]he burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding.").

Under New York law, "a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason."  *Finley v. Giacobbe*, 79 F.3d 1285, 1297 (2d Cir. 1996) (internal quotation marks omitted); *see also Ronga v. N.Y.C. Dep't of Educ.*, No. 10-CV-3327, 2011 WL 1327026, at *4 (S.D.N.Y. Mar. 31, 2011) (same).  Because as a probationary employee Plaintiff lacked a cognizable property right, his procedural due process claim must fail.  *See Finley*, 79 F.3d at 1298 (holding that "as a probationary employee," the plaintiff "ha[d] no actionable property right on which to base her § 1983 claim"); *Lekettey v. City of N.Y.*, No. 14-CV-2528, 2015 WL 1442521, at *8 (S.D.N.Y. Mar. 30, 2015) (concluding that the plaintiff's "status as a

provisional employee—with no expectation of continued employment under New York law—is fatal to her [§] 1983 due process claim"), *aff'd*, 637 F. App'x 659 (2d Cir. 2016).[23]  The Court, therefore, dismisses Count IX.

### 5.  Count X:  Substantive Due Process Claim

Plaintiff further alleges that Defendants violated his substantive due process rights "[b]y repeatedly falsifying official government records in an attempt to destroy [P]laintiff's career as a firefighter and by failing to accurately report [P]laintiff's performance . . . ."  (Am. Compl. ¶ 309.)  In turn, Defendants argue that the Amended Complaint "does not allege Defendants have abused 'some power unique to [their] role as a government entity'" and thereby fails to state a claim.  (Defs.' Mem. 24 (quoting *Perfetto v. Erie Cty. Water Auth.*, No. 03-CV-439, 2006 WL 1888556, at *10 (W.D.N.Y. July 7, 2006)).)

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised."  *Cunney v. Bd. of Trs.*, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotation marks omitted).  A violation of such rights requires a plaintiff to "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir.

---

[23] It also bears underscoring that the state court concluded that "[Plaintiff] was properly terminated as a probationary firefighter . . . in compliance with Village Law § 10-1018 . . . ." (Defs.' Mem. Ex. A, at 8; *see also id.* at 10 (concluding that "[Plaintiff] failed to meet his burden to show that [Defendants'] decision to terminate him as a probationary firefighter with the [Fire Department] was made in bad faith, in violation of statutory or decisional law, or for unconstitutional or illegal reasons").)  Moreover, as discussed above, Plaintiff was given process by way of that Article 78 proceeding. *See Ronga*, 2011 WL 1327026, at *4 (S.D.N.Y. Mar. 31, 2011) ("[I]t is well established that an Article 78 proceeding is a perfectly adequate post-deprivation remedy in the context of employment termination." (internal quotation marks omitted)).

2009) (internal quotation marks omitted).  Put another way, "it must be truly brutal and offensive to human dignity."  *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks omitted); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (explaining that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" (internal quotation marks omitted)); *Schultz v. Inc. Vill. of Bellport*, No. 08-CV-930, 2010 WL 3924751, at *6 (E.D.N.Y. Sept. 30, 2010) (noting that the standard for substantive due process claims "is not easily met"), *aff'd*, 479 F. App'x 358 (2d Cir. 2012).  Moreover, improper actions taken by an employer do not violate an employee's substantive due process rights "simply because that employer is a government official," *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986); *see also Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 353 (E.D.N.Y. 2013) (same), but rather "only if the employer abuses some power unique to its role as a governmental entity," *Perfetto*, 2006 WL 1888556, at *10 (internal quotation marks omitted).  In other words, substantive due process "does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer."  *McClary*, 786 F.2d at 89; *see also Thomas*, 938 F. Supp. 2d at 353 (same).  Furthermore, "courts in this circuit have held that, where a substantive due process claim is duplicative of an equal protection claim, the substantive due process claim should be dismissed."  *Segreto*, 2014 WL 737531, at *5 (citing, inter alia, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 n.8 (2d Cir. 1994)); *see also Roman v. Velleca*, No. 11-CV-1867, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) ("[S]ubstantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources.").

Here, the conduct alleged by Plaintiff to have violated his substantive due process rights mirrors the allegations that form the basis of his equal protection claims—i.e. his targeting by

Yamuder, Stone, and the Lieutenants. (*Cf.* Pl.'s Opp'n 1 (alleging that Defendants "treated [Plaintiff] in a highly selective manner, denying him both his rights to equal protection and substantive due process"); *id.* at 12 (alleging denial of "his right to both equal protection and due process" through the "fail[ure] to properly supervise [the Lieutenants]" and the "internaliz[ation] [of] their baseless criticism").) Count X thereby warrants dismissal as duplicative of other causes of action asserted in the Amended Complaint. *See Aikens v. Royce*, No. 14-CV-663, 2015 WL 7758892, at *12 (S.D.N.Y. Dec. 1, 2015) (dismissing substantive due process claim as duplicative where "the claim [wa]s covered by the Equal Protection Clause"); *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (finding substantive due process claim "subsumed by [the] [p]laintiff's other constitutional claims" where "the harm and conduct challenged by the substantive-due-process, First Amendment, and equal-protection claims significantly overlap"); *Roman*, 2012 WL 4445475, at *10 (dismissing substantive due process claim where "the [p]laintiff d[id] not allege any egregious facts beyond those comfortably subsumed by the [Equal Protection] [C]lause").

Yet, even were the Court to consider Plaintiff's substantive due process claim separately, Count X would fail nonetheless. For one, Plaintiff does not allege that Defendants took any action against him that was uniquely governmental in nature. Rather, in focusing on employment records and evaluations, the Amended Complaint points to conduct that any employer—public *or* private—could take. *See Spencer v. City of N.Y.*, No. 06-CV-2852, 2007 WL 1573871, at *3 (S.D.N.Y. May 30, 2007) (holding "that [the] [p]laintiff fail[ed] to state a substantive due process claim" because the "[d]efendants . . . did not abuse a power unique to the government by giving [her] a negative review"); *Perfetto*, 2006 WL 1888556, at *10 (dismissing substantive due process claim where "[the plaintiff] ha[d] not alleged that the [defendant] took

any action against him that was uniquely governmental in nature" but instead "complain[ed] of conduct which could be taken by any employer—public or private").  Moreover, Plaintiff has not alleged facts that suggest Defendants' actions were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience."  *Okin*, 577 F.3d at 431 (internal quotation marks omitted); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992) (holding that, particularly in the area of public employment, a claim "analogous to a fairly typical state-law tort claim" does not amount to a substantive due process violation).  By Plaintiff's own account, his substantive due process allegations amount to "repeatedly falsifying official records, fabricating non-existent 'accidents,' [and] lodging repeated and totally unfounded attacks upon his character and work ethic . . . with the sole intent of destroying his chance to pass probation and gain permanent status."  (Pl.'s Opp'n 19.)  This, however, does not plausibly state conduct that amounts to a denial of substantive due process.  *See, e.g.*, *Soules v. Connecticut*, No. 14-CV-1045, 2015 WL 5797014, at *2–3, *14 (D. Conn. Sept. 30, 2015) (finding the plaintiff's "substantive due process claims d[id] not allege facts that are so egregious as to 'shock the conscience' as a matter of law" where, according to the complaint, "the defendants solicited false complaints from citizens about the plaintiff," "created falsely negative evaluations about the plaintiff," "attempted to have [the] [p]laintiff's police officer certification revoked," and suspended the plaintiff (some internal quotation marks omitted)); *Roman*, 2012 WL 4445475, at *11 (finding allegations that a defendant "fabricated incidents of misconduct in order to impugn the [p]laintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended[,] . . . however wrongful," did "not plausibly state conduct that amounts to a substantive due process claim as a matter of law"); *Hogan v. State of Conn. Judicial Branch*, 220 F. Supp. 2d 111, 123 (D. Conn. 2002) (holding that the plaintiff could not state a substantive due

process claim based on allegations that the defendant made the plaintiff a scapegoat and had him wrongfully terminated on that basis), *aff'd*, 64 F. App'x 256 (2d Cir. 2003).[24]  Accordingly, Count X is dismissed.

### 6.  Counts I, II, IV, V, VI:  State Law Claims

In addition to the federal constitutional claims addressed above, the Amended Complaint contains a number of claims arising under New York state law—namely, negligence, gross negligence, prima facie tort, breach of contract, and malicious interference with prospective economic advantage.  (*See* Am. Compl. ¶¶ 271–82, 291–95.)  Because these causes of action do not present a federal question, *see* 28 U.S.C. § 1331, and because Plaintiff does not allege that his citizenship is diverse with respect to that of Defendants, *see id.* § 1332, the Court may entertain these claims only pursuant to a theory of supplemental jurisdiction, *see id.* § 1367; *see also Matican v. City of N.Y.,* 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [a plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").

---

[24] While allegations that a defendant "intentionally and maliciously fabricated and disseminated falsehoods in a common effort to deprive the plaintiff of [his] job" could "be sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim," *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005), Plaintiff's allegations do not meet "the extremely high standard" to substantiate such a claim, *Vaher*, 916 F. Supp. 2d at 438. While repeatedly alleging that "[D]efendants affirmatively misrepresented [P]laintiff's performance and conduct," (Am. Compl. ¶ 1; *see also, e.g., id.* ¶¶ 172, 184, 190), the Amended Complaint fails to set forth *facts* suggesting that Defendants' statements were intentional or malicious fabrications, *see Srinivas v. Picard*, 648 F. Supp. 2d 277, 288 (D. Conn. 2009) (dismissing substantive due process claim where the plaintiff alleged that a defendant's statements against her "were 'baseless,'" but provided "no facts . . . suggesting that [the] statements . . . were intentional or malicious fabrications" (citing *Velez*, 401 F.3d at 94)).  Thus, the Court need not "accept as true" Plaintiff's assertions "that [Defendants] gave false and/or misleading statements about [him], in an effort to justify [his] termination." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims. *See* 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and internal quotation marks omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds that nothing distinguishes this Action from "the usual case." Plaintiff's federal claims are all dismissed prior to trial, *see Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States,* No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—militate against such dismissal, 484 U.S. at 350 n.7. Thus, Counts I, II, IV, V, and VI are dismissed without prejudice to refiling in state court.

III. Conclusion

For the reasons stated above, the Motion is granted. The Clerk of the Court is

respectfully requested to terminate the pending Motion, (Dkt. No. 13), and close the case.[25]

SO ORDERED.

DATED:   September 29, 2016
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[25] The Court dismisses this Action with prejudice, as Plaintiff already had a second bite at the apple with his Amended Complaint. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) (dismissing amended complaint with prejudice where the "[p]laintiff has already been given one opportunity to amend his complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity"). Moreover, Plaintiff has made no request to amend again, *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Malgieri v. Ehrenberg*, No. 12-CV-2517, 2012 WL 6647515, at *9 (S.D.N.Y. Dec. 21, 2012) ("[A] district court has no obligation to grant leave to amend sua sponte." (italics omitted)), nor has he explained how he could amend to cure the deficiencies outlined above, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming denial of leave to amend where the plaintiff did not specify "how it could cure its pleading deficiencies"); *Gaffney v. Vill. of Mamaroneck Police Dep't*, No. 15-CV-5290, 2016 WL 4547499, at *7 (S.D.N.Y. Aug. 31, 2016) (declining "to grant [the] [p]laintiff leave to amend sua sponte" where he failed to "suggest[] that he possesse[d] any facts that would cure the deficiencies identified in th[e] opinion" (italics omitted)).

44